UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RACHEL MARIE NEAL,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | No.: 4:16-CV-5131-EFS<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Before the Court are cross summary judgment motions. ECF Nos. 14 & 15. Plaintiff Rachel Marie Neal appeals a denial of benefits by the Administrative Law Judge (ALJ). ECF No. 14. Ms. Neal contends that the ALJ erred because she (1) failed to properly evaluate medical opinion evidence from treating, examining, and reviewing medical sources; (2) inappropriately found Ms. Neal not fully credible; and (3) failed to meet her burden at steps four and five of the disability analysis. ECF No. 14. The Commissioner of Social Security ("Commissioner") asks the Court to affirm the ALJ's decision that Ms. Neal is capable of performing past relevant work as a receptionist. ECF No. 15. After reviewing the record and relevant authority, the Court is fully informed. For the reasons set forth below, the Court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment.

ORDER - 1

**I. Statement of Facts[1]**

Ms. Neal was born in 1985. AR 51. She obtained her Associate's Degree in 2011. AR 210. Ms. Neal has been diagnosed with congenital fusion of the vertebrae, spondylosis, and degenerative disc disease. *See* AR 101. In the past, Ms. Neal has treated her back pain with injections, opiate pain medication, muscle relaxers, massage, and physical therapy. *See, e.g.*, AR 242. At the time of her application, it appears that Ms. Neal was using only ibuprofen to address her pain. AR 73-74. Ms. Neal spends her days caring for her young son and performing household chores, and she engages in social activities with friends periodically. AR 235-242.

Ms. Neal has significant employment history up until her alleged disability onset date. AR 223-234. Just prior to filing this claim, Ms. Neal was working as a receptionist in an orthopedic office, AR 223-224. She had worked in that position for approximately two years, AR 223-224, prior to relocating to a different city, *see* AR 355. Ms. Neal also reports working as a caretaker and in various retail positions. AR 223-234.

**II. Procedural History**

On November 12, 2013, Ms. Neal protectively applied for disability insurance benefits, AR 184-185, and filed a claim for supplemental security income, AR 186-192. Her alleged onset date was July 1, 2013. AR 184, 186. Ms. Neal's claims were denied initially and upon reconsideration. AR 88-139, 141-144. Ms. Neal filed a written request

---

[1] The facts are only briefly summarized. Detailed facts are contained in the administrative hearing transcript, the ALJ's decision, the parties' briefs, and the underlying records.

ORDER - 2

for an administrative hearing, AR 145–146, which was held before ALJ Caroline Siderius on February 23, 2015, AR 34.

On March 30, 2015, the ALJ issued a decision denying Ms. Neal's claims. AR 20–29. The Appeals Council denied review of the ALJ's decision. AR 1–4. On October 6, 2016, Ms. Neal filed this lawsuit appealing the ALJ's decision. ECF Nos. 1 & 4. The parties subsequently filed the instant summary judgment motions. ECF Nos. 14 & 15.

**III. Disability Determination**

A "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The decision maker uses a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

Step one assesses whether the claimant is engaged in substantial gainful activities during the relevant period. If she is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If she is not, the decision maker proceeds to step two.

Step two assesses whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step.

Step three compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404 Subpt. P

App. 1, 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment does not meet or equal one of the listed impairments, the evaluation proceeds to the fourth step.

Step four assesses whether the impairment prevents the claimant from performing work she has performed in the past. This includes determining the claimant's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant is able to perform her previous work, she is not disabled. If the claimant cannot perform this work, the evaluation proceeds to the fifth step.

Step five, the final step, assesses whether the claimant can perform other work in the national economy in view of her age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Bowen v. Yuckert*, 482 U.S. 137 (1987).

The burden of proof shifts during this sequential disability analysis. The claimant has the initial burden of establishing a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The claimant meets this burden if she establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts to the Commissioner to show that (1) the claimant can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). A claimant is disabled only if her impairments are of such severity that she is not only unable to do her previous work but cannot, considering her age, education, and work experiences, engage in any other substantial gainful work that exists in

ORDER - 4

sufficient quantity in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In this case, the ALJ determined that Ms. Neal was not disabled. At step one, the ALJ determined that Ms. Neal had not engaged in substantial gainful activity following her alleged disability onset date. AR 22. At step two, the ALJ found that Ms. Neal has the severe impairment of degenerate disc disease of the cervical and lumbar spine. AR 22-23. At step three, the ALJ found that Ms. Neal's impairments did not meet or medically equal the severity of any listed impairments. AR 23. At step four, the ALJ found:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can lift twenty pounds occasionally, ten pounds frequently; she can perform no work that requires stretching arms out in any direction to lift more than five pounds or push and/or pull with upper extremities more than five pounds. She can sit for up to six hours in an eight-hour workday, but for no more than two hours at one time; stand or walk for up to four hours in an eight-hour workday, but for one hour at a time. She can occasionally squat, kneel, climb ramps and stairs, but never crawl or climb ladders, rope or scaffolds and no work at unprotected heights or operation of heavy machinery or equipment. She should avoid constant turning of the neck in all directions and jobs that require holding the head in a flexed position for more than thirty minutes at a time.

AR 23-24. This finding was based in part on the ALJ's determination that Ms. Neal's statements regarding the severity of her symptoms were "not entirely credible." AR 25. Based on this assessment, the ALJ concluded that Ms. Neal could perform past relevant work as a receptionist. AR 28-29. Accordingly, the ALJ concluded at step four that Ms. Neal is not disabled. AR 29.

**IV.  Standard of Review**

On review, the Court considers the record as a whole, not just the evidence supporting the ALJ's decision. *Weetman v. Sullivan*, 877 F.2d
ORDER - 5

20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)). The Court upholds the ALJ's determination that the claimant is not disabled if the ALJ applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision. *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)); *Brawner v. Sec'y of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1987). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance, *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [ALJ] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). If the evidence supports more than one rational interpretation, a reviewing court must uphold the ALJ's decision. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

**V. Analysis**

The Court addresses each of Ms. Neal's challenges to the ALJ's decision in turn.

    **A. Evaluation of Medical Opinion Evidence**

"In disability benefits cases . . . physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability — the claimant's ability to perform work." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (alteration in original). There are three types of physicians: treating physicians, examining physicians, and non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

ORDER - 6

1995). The ALJ must provide "clear and convincing" reasons for rejecting an examining physician's opinions and may not reject such opinions without providing "specific and legitimate reasons" supported by "substantial evidence" in the record. *Id.* "An ALJ can satisfy the substantial evidence requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (internal quotation marks omitted).

### 1. Dr. Sahota and Physical Therapist Randy Bruce

Ms. Neal argues that the ALJ improperly rejected the opinions of treating physician, Dr. Sahota, and physical therapist, Randy Bruce. Mr. Bruce completed a Medical Source Statement, and that statement was approved and signed by Dr. Sahota. The ALJ found that some of the limitations reflected in the statement were not supported by the record. Ms. Neal argues that this was inappropriate because Dr. Sahota's findings were entitled to deference as findings of a treating physician, Mr. Bruce's opinions were also entitled to consideration, and the findings were not contradictory to other medical evidence in the record.

As an initial matter, under the Social Security regulations, "only licensed physicians and certain other qualified specialists are considered acceptable medical sources." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (internal quotes omitted). Physical therapists are not "acceptable medical sources," and their opinions are not entitled to the same deference as acceptable medical sources. 20 C.F.R. § 404.1513(a), (d); *see also Huff v. Astrue*, 275 F. App'x 713, 716 (9th Cir. 2008) (explaining that the "ALJ was entitled to give the physical therapist's opinion less weight" when the opinion "contradicted the findings of other acceptable medical sources in the record, and the ALJ

ORDER - 7

properly relied on the acceptable medical sources"). Still, the opinions of "other sources" such as physical therapists may be used to "show the severity of [the claimant's] impairment(s) and how it affects [the claimant's] ability to work," 20 C.F.R. § 404.1513(d), and, in this case, the report prepared by Mr. Bruce was also approved by an acceptable medical source.

The ALJ assigned "some weight" to opinions in the report prepared by Mr. Bruce and signed by Dr. Sahota because "much of their opinion is generally consistent with the objective medical evidence." AR 27. The ALJ found, however, that "the opinion regarding missed days and limitations for focus and concentration are not supported by treating source findings that described the claimant as stable or with only mild symptoms." AR 27. The ALJ also found that the weight of the opinion was lessened due to the fact that Ms. Neal "has not undergone any consistent treatment with no treatment for more than two years and no consistent pain treatment." AR 27. The ALJ concluded that "most of the restrictions prescribed by Mr. Bruce and Dr. Sahota have been incorporated by the undersigned into the residual functional capacity assessment in this decision." AR 27.

The Court finds that the ALJ did not err in rejecting the findings as to missed days and limitations on focus and concentration in the statement prepared by Mr. Bruce, an "other source," and approved by Dr. Sahota, a treating source. The ALJ appropriately explained that she was rejecting those findings because they were inconsistent both with treating source records and the fact that Ms. Neal had not undergone treatment for over two years and used only over-the-counter pain medication to alleviate her symptoms. *See* AR 27. The ALJ noted that treating records of Dr. Sahota himself described Ms. Neal's condition as

"stable" and a treating record from Dr. Wahl described Ms. Neal's symptoms as mild. *See* AR 26-27. The ALJ did not err by giving more weight to opinions from acceptable medical sources than to the statement prepared by Mr. Bruce and approved by Dr. Sahota. In addition, the ALJ did not reject the statement or even assign the opinion "little weight," and instead gave the opinion "some weight" and accepted most of the findings in the statement because they were supported by the record.

Ms. Neal also argues that the limitations suggested by Mr. Bruce and Dr. Sahota were not contradicted by the record and were confirmed by the medical examiner, Dr. Thompson. This argument is not supported by the record. While Dr. Thompson did not expressly disagree with the limitations proposed by Mr. Bruce and Dr. Sahota, his findings differed from their findings. The exchange proceeded, in relevant part, as follows:

> Dr. Thompson: The RFC of Exhibit 10F, I believe, is what counsel is referring to, and the opinion of the examining doctors is considered. My job is not to disagree, and I don't necessarily disagree. However, I have to offer an RFC based on strictly the objective musculoskeletal evidence in the written record. That's my charge. Consequently I have a somewhat more — somewhat less restrictive RFC.

AR 42.
> Claimant's Attorney: [T]he attending sources have said that she would be limited to seldom, meaning only up to about 10 percent of the time, of twisting the torso, or twisting the neck, and that she should avoid maintaining a flexed neck posture, and maintaining a forward bent posture, such as trying to reach over a conveyor belt, something like that. Would you concur with those restrictions?
> Dr. Thompson: Yes, I would.
>
> ***
>
> Claimant's Attorney: The attending physician also opined that she is probably going to have episodic flare ups of symptoms that absenteeism is likely to exceed two to three days per

ORDER - 9

month. Would you have any reason to disagree with that observation?
Dr. Thompson: I do not have reason to disagree. Obviously my role here is not to — not so much to make that estimate, because I think that those kind of estimates, unless there's absolute evidence, is beyond the scope of what my roles [sic] is.

AR 44–45. After this line of questioning, the ALJ asked Dr. Thompson to clarify:

> ALJ: I just want to clarify one of the limitations, doctor, with her arms and the position of her head and her neck. Could you just give me an idea of what kind of limitations she would need in an eight hour day?
>
> ***
>
> Dr. Thompson: So consequently a prolonged positioning in a head down position really would be avoided. And it is indeed time limited. People can do it for a period of time, and then there has to be breaks or change positions [sic], or lie down sometimes.
>
> ***
>
> ALJ: It sounds like you would recommend limiting the movement of the head. You don't want a job where you're having to look up, look down, look sideways constantly. It sounds like this is a person who would need to remain pretty much upright, and without doing a lot of heavy lifting in any direction, or really even light lifting in any direction.
> Dr. Thompson: That's my belief, your honor.

AR 46–48 ("sic" in original). Claimant's attorney then followed up with additional questions:

> Claimant's Attorney: Doctor I think you were saying that even if we've got an upright position, or we've got the table in the right place, because they're trying to do something with their hands, and if that job then requires them to look down to do that, it'[s] that flexion of the neck that, with her degenerative condition, she probably wouldn't tolerate that more than on a seldom basis, meaning about 10 percent of the day? Is that fair?

ORDER - 10

>     Dr. Thompson: It's very hard to make a number, but it would
>     certainly be limited. And it would probably not really meet
>     the definition of occasional, which is a third of a day. Would
>     doubt that.

AR 49. This exchange demonstrates that Dr. Thompson did not expressly agree with the findings of Dr. Sahota and Mr. Bruce as to Ms. Neal's absenteeism or as to the finding that Ms. Neal's flexion of the neck would be limited to seldom. While Dr. Thompson also did not expressly disagree with the statement findings, he did note that he would not assign a number to Ms. Neal's ability to perform certain activities and found that assigning a number as to absenteeism was beyond the scope of his responsibilities as a medical expert. Accordingly, the ALJ reasonably found that the statement prepared by Mr. Bruce and signed by Dr. Sahota was not fully supported by Dr. Thompson.

Thus, because the ALJ noted contradictory evidence in the record and Dr. Thompson's testimony did not fully support the findings of Dr. Sahota and Mr. Bruce, the ALJ was justified in rejecting portions of the statement that she found to be unsupported by the record.

**2.   Dr. Thompson**

Ms. Neal contends that the ALJ failed to properly consider the opinion of the medical examiner, Dr. Thompson, because the ALJ's RFC did not reflect all limitations found by Dr. Thompson, and the ALJ did not provide an explanation for rejecting Dr. Thompson's opinion. This argument is not supported by the transcript of the hearing.

As reflected in the exchange above, Dr. Thompson did not find, as Ms. Neal asserts, that Ms. Neal should be limited to seldom twisting her torso and neck or that Ms. Neal would need to avoid any forward flexion of the low back. Dr. Thompson stated that he agreed with the findings of Dr. Sahota and Mr. Bruce that Ms. Neal could conduct these activities

only on a seldom basis "or something like that." AR 44. Dr. Thompson later clarified that Ms. Neal's ability to perform these tasks would be "limited," but declined to assign a particular number to how often Ms. Neal could do such tasks. AR 49. In addition, in response to the ALJ's questioning, Dr. Thompson stated that Ms. Neal's ability to look down and flex the neck is time limited. AR 46. The ALJ's RFC finding that Ms. Neal cannot turn her head constantly and cannot hold her head in a flexed position for more than 30 minutes is a reasonable interpretation of Dr. Thompson's statements.

In addition, Dr. Thompson stated that he had no reason to disagree with the finding of Dr. Sahota and Mr. Bruce regarding absenteeism, but rather than agreeing with that finding, Dr. Thompson stated that such a finding was beyond the scope of his responsibilities as a medical expert. Accordingly, the ALJ did not contradict Dr. Thompson's recommendation when she declined to include absenteeism in the RFC.

The Court therefore holds that the ALJ did not reject Dr. Thompson's findings.

### B. Credibility Determination

Ms. Neal argues that the ALJ improperly found that she was not fully credible based on cherry-picking evidence from the record and a flawed finding that Claimant's daily activities were inconsistent with her symptom testimony.

A two-step analysis is used by the ALJ to assess whether a claimant's testimony regarding subjective pain or symptoms is credible. *Garrison*, 759 F.3d at 1014. Step one requires the ALJ to determine whether the claimant presented objective medical evidence of an impairment, which could reasonably be expected to produce some degree of the pain or other symptoms alleged. *Lingenfelter v. Astrue*, 504 F.3d

ORDER - 12

1028, 1035–36 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Objective medical evidence of the pain or fatigue, or the severity thereof, need not be provided by the claimant. *Garrison*, 759 F.3d at 1014.

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ must accept the claimant's testimony about the severity of her symptoms unless the ALJ provides specific, clear, and convincing reasons for rejecting the claimant's symptom-severity testimony. *Id.* An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007). To discredit a claimant's testimony after finding that a medical impairment exists, however, "the ALJ must provide specific, cogent reasons for the disbelief." *Id.* (internal quotation marks omitted). "Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Id.* at 636.

In this case, the ALJ found that Ms. Neal's "medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." AR 25. The ALJ explained that "[s]upport for this conclusion has been derived from the objective medical evidence, the lack of treating medical opinion during the relevant period, as well as the opinions of the independent medical expert at the hearing and the opinions of non-examining state agency medical consultants who had the opportunity to evaluate the documentary evidence of record." AR 25.

ORDER - 13

The ALJ noted: "[Ms. Neal] has not been referred to a chronic pain management facility or undergone treatment for pain; she has undergone generally conservative treatment with over-the-counter Ibuprofen; treatment, has been sporadic and inconsistent and treating and evaluating medical sources have noted no more than mild or stable objective findings during the examinations." AR 25. These findings are supported by the record, and the Court holds that it was appropriate for the ALJ to consider these inconsistencies between Ms. Neal's conduct and her testimony.

After describing the medical evidence in the record, the ALJ further explained that Ms. Neal's "allegation of total disability is not reflective of the objective medical evidence." AR 28. The ALJ reasoned that "the level of activity reported by the claimant is inconsistent with her allegation of total disability" because Ms. Neal reported caring for, playing with, and lifting her young son; spending time on the computer and time with friends; being able to walk a half mile; doing dishes, laundry, vacuuming, sweeping, mopping, cooking meals; driving a car; going shopping; paying bills and managing money; doing crafts; and participating in game nights. AR 28. The ALJ also noted that "the claimant acknowledged that she stopped working after the birth of her son and her husband finding a better job so she could stay at home with her son." AR 28.

Although the Ninth Circuit has held that "impairments that would unquestionably preclude work and all of the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day," *Garrison*, 759 F.3d at 1016, the Court holds that the ALJ appropriately considered the types of activities performed by Ms. Neal and whether those activities were consistent with the level of

disability claimed. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The Court holds that the ALJ's finding that Ms. Neal's reported activities include activities that are consistent with light work is reasonable and supported by substantial evidence in the record.

The ALJ provided specific, clear, and convincing reasons for not fully crediting Ms. Neal's testimony as to symptom severity. The ALJ, therefore, did not err in finding Ms. Neal's testimony not entirely credible based on inconsistencies with the objective evidence, Ms. Neal's daily activities, Ms. Neal's failure to pursue treatment, and other evidence in the record such as Ms. Neal's statement that her decision not to work was based on factors other than disability.

### C. Step Four and Step Five Findings

Ms. Neal argues that the ALJ failed to meet her burden at steps four and five of the disability inquiry. Ms. Neal argues that the ALJ erred at step four by failing to include restrictions suggested by Dr. Thompson, Dr. Sahota, and Mr. Bruce. Ms. Neal argues that the ALJ was required to advance to step 5 and that the ALJ failed to meet her burden at step five because the hypothetical she posed to the vocational expert did not fully capture Ms. Neal's limitations.

"If an ALJ finds a severe impairment at step two, that impairment must be considered in the remaining steps of the sequential analysis." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). If the hypothetical posed to the vocational expert "does not reflect all the claimant's limitations, we have held that the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991). The hypothetical should be "accurate, detailed, and supported by the medical record." *Osenbrock v. Apfel*, 240 F.3d 1157, 1165

ORDER - 15

(9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999)). It is, however, "proper for an ALJ to limit a hypothetical to those impairments that are supported by substantial evidence in the record." *Id.*

The Court has held that the ALJ did not fail to include restrictions suggested by Dr. Thompson, reasonably declined to fully credit Ms. Neal's testimony, and reasonably rejected portions of the statement prepared by Mr. Bruce and approved by Dr. Sahota. Based on these determinations, the Court now holds that the hypothetical the ALJ posed to the vocational expert was a reasonable reflection of the limitations supported by the record in this matter. Based on the opinion of the vocational expert, the ALJ appropriately concluded that Ms. Neal could perform past relevant work as a receptionist. Thus, Ms. Neal does not meet the definition of disabled under the Social Security regulations, and the ALJ was not required to advance to step five.

**VI. Conclusion**

For the reasons outlined above, the Court finds that the ALJ's finding of nondisability is both reasonable and supported by substantial evidence in the record. The Court therefore denies Plaintiff's Motion for Summary Judgment and grants Defendant's Motion for Summary Judgment.

Accordingly, **IT IS HEREBY ORDERED:**

1. Ms. Neal's Motion for Summary Judgment, **ECF No. 14**, is **DENIED.**

2. The Commissioner's Motion for Summary Judgment, **ECF No. 15,** is **GRANTED**.

3. The Clerk's Office is to enter **Judgment** in favor of the Commissioner.

4. The case shall be **CLOSED.**

ORDER - 16

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to counsel and ALJ Caroline Siderius.

**DATED** this 14th day of August 2017.

```
           ___s/Edward F. Shea__
              EDWARD F. SHEA
      Senior United States District Judge
```

Q:\EFS\Civil\2016\5131.Neal.ord.deny.smj.ss.lc02.docx

ORDER - 17